UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:14-CR-55 JD |
| | ) | |
| JAMES P. LEDONNE | ) | |

**UNITED STATES' MEMORANDUM IN
SUPPORT OF PRETRIAL DETENTION**

Comes now David Capp, United States Attorney for the Northern District of Indiana, by Donald J. Schmid, Assistant United States Attorney, and files this supplemental memorandum to its oral motion for detention.

The legislative history of the Bail Reform Act makes clear that Congress intended that the "safety of the community" concern in § 3142 was expected to be construed as broader than merely danger of harm involving physical violence.  S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3195 ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence").  See also *United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993).

Courts have considered economic harm in evaluating danger to the community under § 3142 of the Bail Reform Act. In *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992), the Ninth Circuit observed that "danger may, at least in some cases, encompass pecuniary or economic harm." *Id*. at 192 (referencing *United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979) (danger not limited to physical harm; the concept includes the opportunity to exercise a substantial and corrupting influence within a labor union)); see also *United States v. Parr*, 399 F. Supp. 883, 888 (W.D. Tex. 1975) ("The 'danger to . . . the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large."). See also *United States v. Stein*, 2005 U.S. Dist. LEXIS 28166, 2005 WL 3071272 (S.D.N.Y. Nov. 15, 2005); *United States v. Parr*, 399 F. Supp. 883, 888 (W.D. Tex. 1975) (pecuniary harm)); see also *United States v. Moss*, 522 F. Supp. 1033, 1035 (E.D. Pa. 1981) ("It is generally agreed, of course, that a [c]ourt may refuse bail on the ground that a defendant poses a threat to the community even though the threat is pecuniary rather than physical."), aff'd 688 F.2d 826 (3rd Cir. 1982); *United States v. Miranda*, 442 F. Supp. 786, 792 (S.D. Fla. 1977) ("First, it is beyond dispute that the criterion of 'danger to the community,' which is an explicit component of the Bail Reform Act, is not limited to the potential for doing physical harm.") (citing *United States v. Louie*, 289 F. Supp. 850 (D.C. Cal. 1968)).

The question really is one of propensity to commit further crimes, even if the resulting harm is solely economic.  See *Provenzano*, 605 F.2d at 95.  This seems to be true even in the cases where pretrial detention is the relevant question.  See, e.g., *United States v. Persaud*, 2007 U.S. Dist. LEXIS 25518, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (agreeing that "economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); see also *Gentry*, 455 F. Supp. 2d at 1032 ("[d]anger . . . may be assessed in terms other than the use of force or violence").

In *United States v. Griffin*, No. 2:10-cr-003, 2010 U.S. Dist. LEXIS 37191, 2010 WL 1049228, at *2 (W.D.N.C. Mar. 18, 2010), the defendant pled guilty to bank fraud, aggravated identity theft, access device fraud, and mail fraud.  2010 U.S. Dist. LEXIS 37191, [WL] at * 1.  Citing to prior convictions of financial crimes that had created an economic danger to the community, the Magistrate Judge Dennis Howell acknowledged that the defendant was not a physical threat but an economic threat.  *Id*.  The court denied the defendant's pre-sentencing release, in part, because of the defendant's ability to perpetrate further financial harm while on release.  2010 U.S. Dist. LEXIS 37191, [WL] at *2.

In another case, *United States v. Masters*, 730 F. Supp. 686 (W.D.N.C. 1990), the Honorable Robert D. Potter addressed whether a defendant who had been convicted of twenty-four counts for his participation in a conspiracy to promote bogus tax shelters should be released on bail post-sentencing and pending his

3

appeal. The Court recognized the need to protect the community from the economic threat posed by the defendant, stating:

> In this case, the Court is concerned about the safety of the community if Defendant is released. The unrefuted evidence presented at the sentencing hearing indicates Defendant participated in questionable investment schemes during the pendency of the serious charges in this case. Defendant asserts that he does not pose a physical danger to the community. However, the Court believes it must also consider the danger of a person who continues to participate in possibly fraudulent schemes. See *United States v. Malquist*, 619 F. Supp. 875, 878 (D. Mont. 1985) (non-violent, tax protester defendant denied release pending appeal under § 3143(b) when he demonstrated a militant lack of responsibility). Frankly, the Court believes Defendant is an unrepentent [sic] con-artist who will continue to prey on any person gullible enough to listen to his sales talk. Nothing short of post-conviction incarceration will ensure the safety of the community.

*Masters*, 730 F. Supp. at 689.

James P. LeDonne is also an unrepentant con artist and serial fraudster. LeDonne already has a prior federal conviction for bank and wire fraud in case no. 3:92-CR-52 AS.[1] He has other convictions for theft (1993), forgery – class C felony

---

[1] The facts underlying his prior federal conviction are as follows. LeDonne, then a thirty-nine year old businessman, was the incorporator and manager of a number of distributing and leasing companies engaged in the business of buying and selling wholesale and retail vehicles to various leasing companies, dealers, and rental car companies. His position with the various companies authorized him to make deposits in and write checks on several bank accounts in order to manage the financial transactions involved in procuring and distributing vehicles. Between the months of February and July of 1991, LeDonne contacted various companies from his Elkhart, Indiana office, via telephone or telefax to place purchase orders for vehicles. Knowing that there were insufficient funds to pay for the vehicles, he would assure the sellers that he would provide cash payment in compliance with the purchase agreement. He would then submit payment in the form of an overdraft check and arrange to have the vehicles picked up on a Friday afternoon in order to prevent the seller from confirming whether sufficient funds were available before completing the transaction. When the sellers contacted LeDonne after discovering they had received insufficient funds checks, LeDonne provided ready excuses for the overdraft. He would then sell the vehicles to generate cash knowing, however, that he could not deliver title as the vehicles were not paid for because they had been purchased with overdraft checks. This scheme formed the basis of the charge of wire fraud. As it became increasingly difficult to support this method of doing business, LeDonne devised a check

4

(1993), auto theft (1993) and check deception (1993).  He will soon have an additional pending theft/check deception case pending in Elkhart County, Indiana.  His reputation in the community is as a liar, a complete fraud, and a sociopath.

The seventeen-count Indictment here alleges that LeDonne over a six-year period devised and executed a scheme to defraud persons and companies who wanted to purchase and use mobile fiber optic splicing/testing units.  LeDonne represented to prospective buyers and more than 65 victims that he could and would produce mobile fiber optic splicing/testing units that were part of trucks, vans, trailers and truck inserts.  As part of his scheme, LeDonne demanded and obtained down payments from purchasers to secure an order for the assembly and manufacture of mobile fiber optic splicing/testing units.  LeDonne and his several companies then did not deliver the promised units.  LeDonne and his representatives promised various delivery dates to victim purchasers that came and went without delivery of a mobile fiber optic splicing/testing unit.  LeDonne communicated, including through interstate emails, various excuses for why the units were not delivered as represented and promised.  These excuses were false and fraudulent.   In fact, the companies operated by LeDonne had little to no real capacity to manufacture the mobile fiber optic splicing/testing units that were part of trucks, vans, trailers and truck inserts.  LeDonne also used a series of bankruptcies to avoid having to refund monies to victim purchasers.  LeDonne would then create a new company and victimize additional prospective mobile fiber

---

kiting scheme utilizing various bank accounts throughout Indiana and Michigan.  See *United States v. LeDonne*, 21F.3d 1418 (7th Cir. 1994).

optic splicing unit purchasers through the new company. Level 4 Technologies LLC filed bankruptcy in 2008. L6 Engineering Systems LLC filed bankruptcy in December 2010. LG Engineering & Design Inc. filed bankruptcy in December 2013. LeDonne made false statements and caused others to make false statements in those bankruptcy proceedings.

LeDonne even obtained a trailer already built and delivered to a customer in 2007 in Indiana under the guise of a recall in the first half of 2012. LeDonne then delivered this used (stolen) trailer to an unsuspecting LG Engineering & Design Inc. customer in Georgia in the summer of 2012. As part of the fraud, LeDonne issued a new vehicle identification number for the stolen trailer so the Georgia customer could register and plate the trailer.

Moreover, it appears that LeDonne is at present attempting to continue to defraud new potential investors and new victim companies who need fiber optic splicing units. Evidence uncovered during the execution of a federal search warrant on May 9, 2014 showed that LeDonne has re-badged himself yet again – this time under the name Paragon Technologies Group Inc., is seeking to obtain monies from new investor victims, and is soliciting more down payments from new victims seeking to purchase fiber optic splicing units.

The Court in *United States v. Gill*, 2008 U.S. Dist. LEXIS 120659, 2008 WL 2120069 (E.D. Cal. May 20, 2008), relied on similar factors to detain the defendant, explaining:

> Given Gill's criminal record, this last indictment demonstrates that the safety of the community cannot be reasonably assured by further conditions. Gill has been previously convicted of three incidents of cashing insufficient funds checks (two felonies and one misdemeanor); he also presented a false claim in Yuba County for which Gill reports he received probation. Combining in the analysis the past criminal record with the first federal fraud indictment, and now the second federal fraud indictment, the [court] additionally finds, although by the words of the statute no finding is necessary, that conditions of release are unlikely to deter Gill from further misconduct.

*Id*.

Defendant LeDonne should be detained as a danger to persons and entities in the community. LeDonne should also be detained as a flight risk because he faces a long prison sentence (given large losses to victims and prior fraud convictions) and because he cannot be trusted to appear. Indeed, he simply cannot be trusted at all.

Dated: May 21, 2014

                                  Respectfully submitted,

                                  DAVID CAPP
                                  UNITED STATES ATTORNEY

                  By:   s/ Donald J. Schmid
                            Donald J. Schmid
                            Assistant United States Attorney

**CERTIFICATE OF SERVICE**

    I certify that on May 21, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to defense counsel of record.

        s/ Chris Carson
        United States Attorney's Office
        204 S. Main Street, Room M01
        South Bend, IN 46601
        574-236-8287