UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:14-CR-55 JD |
| | ) | |
| JAMES P. LeDONNE | ) | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF MAGISTRATE JUDGE'S DETENTION ORDER

Comes now David Capp, United States Attorney for the Northern District of Indiana, by Donald J. Schmid, Assistant United States Attorney, and files this memorandum in support of the Magistrate Judge's detention order.

**Summary**

LeDonne is a real flight risk. He faces near certain conviction. The Magistrate Judge assessed the strength of the government's case as a strong case. The defendant faces a guideline sentence of 17 -27 years imprisonment, depending on how his extensive criminal history including prior federal conviction is counted. The defendant faces numerous creditors, and has failed to appear for recent "supplemental proceedings" in state court in an effort to avoid paying outstanding civil judgments as well as some criminal proceedings in years past. The defendant is estranged from his wife and family, his home is being sold with a closing date of late July 2014, and he has no employment and little prospect of employment given his widespread reputation in the community as a fraudster and financial predator.

LeDonne has the means to flee because he is skilled at hiding assets including in Florida, and has been able to raise thousands of dollars of cash even while he has been incarcerated in this case.  He is a very skilled con man.

The defendant is not trustworthy.  He is a sociopath and pathological liar.  He recently lied to this Court denying that he had any assets.   He lied to the Pretrial Services Officer on May 19, 2014 when he falsely denied any liabilities – when people had been hounding him with civil judgments and other substantial efforts to collect what the defendant had stolen from them.  The defendant has an extensive history of fraud, forgery and theft with multiple prior felony convictions.  He had his bond revoked by Judge Sharp in his original federal fraud case on December 14, 1992.  Judge Sharp stated there: "I think he is plenty capable of taking off … because he doesn't take this court very seriously, doesn't take the state courts very seriously …"  (Bond Hearing Tr. at p. 7, 12/14/1992.)

**LeDonne faces a long sentence, cannot be trusted, and is a flight risk**

The pretrial detention provisions of the Bail Reform Act authorize the detention of defendants awaiting trial under certain circumstances. *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Pursuant to § 3142(e) of the Act, if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required …, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e).  The government bears the burden of proving by a preponderance of the evidence that the defendant is a flight risk.  *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985).  Detention may be

ordered based on the government's showing that defendant is either a flight risk or a danger to the community; the government need not prove both. Id. at 765.

Courts consider the potential length of the sentence that the defendant faces when determining whether there is concern for defendant's appearance in court. See *United States v. Parahams*, No. 3:13-CR-005 JD, 2013 WL 683494, at *2 (N.D. Ind. Feb. 25, 2013). See also *United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985) (drug kingpin faced with possible life imprisonment is "a prospect likely to make anyone think of fleeing, especially if he is likely to be convicted" and thus supports district court's decision for detention); *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (permitting a district court to consider possible punishment as an incentive for defendant to flee when assessing flight risk); *United States v. Stanford*, 341 Fed.Appx. 979, 982 (5th Cir. 2009) (district court properly factored daunting 375-year imprisonment sentence if found guilty for 21 offenses including mail fraud, wire fraud, and conspiracy in determination that he was a flight risk). If the defendant failed to appear in a prior court hearing that involved lesser potential penalties, courts will find that the defendant has even more motive to flee when faced with harsher penalties and conclude there is a flight risk by the preponderance of the evidence. *Parahams*, 2013 WL 683494.

The defendant in *Parahams* was charged with defrauding the United States by obtaining fraudulent tax refunds. He had an extensive criminal record, including a failure to appear in state court for which a warrant was issued. This Court noted that the defendant never faced substantial prison time in his prior

3

state convictions, whereas he faced a possible 10-year sentence for the current federal charge based on the Sentencing Guidelines and the statutory maximum. This Court expressed that, because the defendant had been noncompliant with court dates as well as probation terms when faced with less substantial state penalties, "the Court has concerns that he is not likely to be compliant here, where much more is on the line." *Id.* at *2. This determination, in addition to the defendant's "demonstrated lack of respect for the law" and possible means to disappear, convinced the court that the defendant was a flight risk. *Id.* at *3. See also *United States v. Kisling*, 334 F.3d 734 (8th Cir. 2003) (affirmed detention of defendant charged with conspiracy and multiple counts of mail fraud based on prior failure to appear and attenuated community ties, specifically that defendant's family did not wish to associate with him anymore and that defendant was unemployed).

The Seventh Circuit Court of Appeals also noted in *Diaz* that, even if the defendant's relationships with his wife and children are precious and he would be forced to sever them to flee, it is likely that the ties will be severed anyway if he stays because he is faced with life-imprisonment. *Diaz*, 777 F.2d at 1238.  Thus, familial ties may not be an adequate reason for a defendant faced with harsh penalties to appear for court.  Here, defendant LeDonne faces effectively a life sentence because of the long statutory maximum penalties from the 17 counts and, more to the point, a very long U.S. Sentencing Guideline range for imprisonment of

at least 17 years imprisonment.  LeDonne is 59 years old and faces the following base offense level and enhancements:

| | |
|---|---|
| Base offense level  2B1.1(a)(1) | 7 |
| Loss - $1.5 million  2B1.1(b)(1)(I) | +16 |
| More than 50 victims  2B1.1(b)(2)(B) | +4 |
| Receiving stolen property  2B1.1(b)(4) | +2 |
| Bankruptcy misrepresentation/fraud  2B1.1(b)(9)(B) | +2 |
| Sophisticated means  2B1.1(b)(10)(C) | +2 |
| Aggravating role – leader/organizer  3B1.1(c) (not involving 5 or more criminal participants) | +2 |
| Obstruction of justice  3C1.1 (false statements to US Pretrial/Court) | +2 |
| Adjusted offense level | **37** |

| Criminal History Category | I | (210-262 months) |
|---|---|---|
| | II | (235-293 months |
| | III | (262-327 months) |

Other factors to be considered when determining whether there is a serious risk that the defendant will flee include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person, including (A) the record concerning appearance at court proceedings, criminal history, past conduct, person's character, financial resources, employment, and family ties.  18 U.S.C. § 3142(g).

In addition, electronic monitoring is not an adequate measure to insure a defendant will not flee when he poses as a flight risk.  Courts have held that

electronic monitoring allows defendants to flee before monitoring begins and thus is an insufficient means for assuring defendants' appearances.  See *United States v. Ali*, 793 F. Supp. 2d 386, 392 (D.D.C. 2011) ("electronic monitoring would give [defendant] ample lead time if he wished to flee"); *United States v. Townsend*, 897 F.2d 989, 994-95 (9th Cir. 1990) ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction."). Therefore, electronic monitoring is not a condition upon which defendants may be released when there is a risk of flight because it does not reasonably assure the appearance of the person as required. Similar to the defendant in *Parahams*, LeDonne is a flight risk because he failed to appear in prior state court proceedings for which he faced a lesser punishment.  On November 30, 1992, a bench warrant was issued for Mr. LeDonne from Elkhart Superior Court No. 2 after he failed to appear for a sentencing hearing.  (Dec. 14, 1992 Bond Revocation Hearing Tr. at 2.) He had been charged with theft and forgery, a Class C felony that in Indiana imposes a punishment of two to eight years of imprisonment.  (May 19, 2014 Pretrial Services Report at 3.)

LeDonne more recently failed to appear in the St. Joseph Superior Court for "proceedings supplemental" (judgment creditor examination) in a case in which 1st Source Bank obtained a judgment against LeDonne.  Initially the bank obtained a default judgment but later LeDonne entered into a supplemental judgment. LeDonne failed to appear in Court on July 25, 2013 and November 22, 2013 and successive orders to show cause have had to be issued by the Superior Court under

threat of a body attachment. If LeDonne will not appear in state court to be examined about his financial resources in a case involving a $23,000 judgment, there is little reason to expect that he will appear in this Court and report for his sentence where the stakes are much, much greater.

Here, LeDonne is charged with 17 counts for a total maximum sentence of 315 years in prison. Based on his prior history, the fact that there are more than 50 victims and $1.5 million in losses, and that he developed a sophisticated scheme that included fraudulently filing bankruptcy repeatedly and lying in Section 341 creditor meetings, the Sentencing Guidelines recommend around 17 to 27 years of imprisonment. This daunting sentence is much more severe than the state court sentence he faced in 1992 in which he failed to appear and much more grave than the consequences of the civil action that he failed to appear for in 2013. As in *Parahams*, LeDonne has even more motive to flee than before because he is faced with harsher penalties than those for which he previously failed to heed the law and explicit court orders. Furthermore, similar to the defendant in *Diaz*, the sentence may mean an effective term of life imprisonment given LeDonne's age and hence presents an even greater incentive for him to flee.

LeDonne also has had difficulty complying with pretrial/probation terms. The district court judge conducting LeDonne's bond review hearing in 1992 noted that he was "cavalier" with terms of release, had traveled outside the district without permission, and had failed to report to the Marshal's Office as instructed. (Dec. 14, 1992 Bond Revocation Hearing Tr. at 3.) Furthermore, his attorney

7

withdrew in part because of the defendant's unavailability to counsel. (Dec. 14, 1992 Bond Revocation Hearing at 6.) Just as this Court affirmed the Magistrate Judge's detention order in *Parahams*, here too the Magistrate Judge's detention order for LeDonne should be affirmed. Due to LeDonne's demonstrated lack of respect for court proceedings and probation terms coupled with the significant sentence he is facing, the defendant poses as a flight risk and cannot be trusted to appear in court on his own volition.

The nature and circumstances of Mr. LeDonne's offense concretely demonstrate that he cannot be trusted. He is charged with 11 counts of wire fraud, three counts of mail fraud, one count of conspiracy to commit fraud, one count of interstate transportation of stolen goods, and one count of bankruptcy fraud. His scheme involved receiving payments for mobile units with fiber optics and then failing to deliver any units. The weight of the evidence against him is significant, as he victimized over 65 persons across the United States and Canada who have been interviewed and there is documentation of the bank wires and LeDonne emails with misrepresentations, mailed items in furtherance of the fraud, and fraudulent filings for bankruptcy. His willingness to defraud the bankruptcy court and the U.S. Trustees Office too, as set out in Count 17 of the Indictment, is especially troubling and portrays an inclination to lie to the courts and its officers.

LeDonne took significant measures to deceive and avoid his customer having his employees deflect calls from victims, making constant excuses for the non-delivery of units, and making false promises of deliveries in the near future. He

strung his victims along mercilessly. The fact that he was able to avoid his victims for so long proves that he is evasive and experienced in concealment. The nature of these crimes show that he is skilled at deception, remorseless in regards to his victims, and an untrustworthy individual.

LeDonne's history and personal characteristics validate that he is a definite flight risk. His lack of appearance at past court hearings is proof that he would not hesitate to flee here. He has a criminal history involving thefts, forgeries and deceptions, and bank and wire frauds. After the Elkhart County Sheriff's Department arrested him for theft and forgery, for which he failed to appear for sentencing, he was charged in 1991 and 1992 with auto theft and deception in Richmond, Indiana, theft in Breman, Indiana, and deceptive practice in Bloomington, Indiana. Also during that time, he defrauded numerous auto dealers, leasing companies, and individual purchasers by making vehicle purchases with checks drawn on insufficient funds and then selling the vehicles without having title. (Nov. 25, 1992 Presentence Investigation Report.) In this scheme he also hired receptionists to deflect calls from dealers who had received insufficient fund checks and promise reimbursement soon. (Nov. 25, 1992 Presentence Investigation Report, ¶ 48.) After victimizing over 30 entities and individuals, including banks, LeDonne pled guilty to one count of wire fraud and one count of bank fraud. (Nov. 25, 1992 Presentence Investigation Report, ¶¶ 4, 29.) LeDonne also attempted to defraud the United States District Court for the Northern District of Indiana by providing materially false income information to a Probation Officer in respect to a

Presentence or other investigation for the court.  (Nov. 25, 1992 Presentence Investigation Report, ¶¶ 34-35.)  After his federal sentence of 63 months imprisonment in 1993, in addition to his state sentence of six years in the department of corrections for theft and forgery, he failed to develop respect for the law or society; upon release, in little time he once again concocted a scheme to defraud and to steal rather than pursue an honest living.  He has left a string of victims in his wake.  His personal character reveals he is a pathological liar and unremorseful con artist.  As evidenced by his prior counsel's (Milner) Motion to Withdraw, it appears he even lied to his own attorney in June 2014.

LeDonne also lied to the U.S. Pretrial Services in this case when he was interviewed on May 19, 2014.   Initially, LeDonne denied he had any prior criminal history.  When confronted with his prior federal conviction by this Court's officer, LeDonne slowly acknowledged that conviction.  LeDonne then falsely represented to the Pretrial Services Officer that he had any liabilities (except for medical expenses of $1,000).  This was a gross lie.  Many persons have outstanding judgments against LeDonne, including 1st Source Bank, attorney Christopher Potts, and many others -- including some who testified at the original detention hearing.

With regards to his financial resources, LeDonne has reported that he has no bank account, investment account, or substantial assets.  (June 25, 2014 Status Hearing Tr. at 3-4.)  This unbelievable statement suggests he is hiding resources and increases the likelihood that he has secreted means to flee.  In jail calls, LeDonne references two vehicles he has secreted in Florida that he could use for

10

transportation when he gets out.  LeDonne further reported to this Court at a recent hearing that his house is titled only in his wife's name, again arising suspicion that he is hiding assets.  LeDonne's denial of any assets when asked about assets by this Court is contradicted by statements he made during jail calls in July 2014 (excerpts of which will be played at the detention review hearing) and is especially concerning because hidden assets give him the ability to flee without hindrance.  He also has contacts in Florida and lived there for a time in the past several years.  In addition, because his fraud operations have been discovered, he has no current employment and little prospect of any employment here to tie him to this community.  LeDonne's recent jail calls in June and July 2014 also reveal that he does have sources for cash because he has raised from sources (some named, some unnamed) thousands of dollars of cash even while he has been incarcerated since his arrest in this case.

     Although LeDonne is currently married and has five children in this area, his relationships with his family are estranged.  He is not invested in his children's lives, spent little time with them prior to his arrest, and has a very strained relationship with his wife.  His oldest child (Abby, 15) left the household to live with her maternal grandparents after witnessing what LeDonne did to her mother/LeDonne's wife.  The other children have at times refused to talk to LeDonne on the phone from jail recently.  LeDonne's first wife divorced him after reporting to a Federal Probation Officer that he was "verbally and physically abusive" and "a pathological liar."  (Nov. 25, 1992 Presentence Investigation Report,

¶76.) LeDonne was arrested for Disorderly Conduct after a public confrontation with his ex-wife in 1989. (Nov. 25, 1992 Presentence Investigation Report, ¶ 77.)

The family's home in Granger is being sold right now with an accepted offer and an expected closing date in late July 2014. The defendant's current wife Stephanie LeDonne does not want the defendant to return to family and she is expected to legally separate or divorce the defendant in the coming months. The defendant has reported in jail calls that his father, brother and sister view him as "dirt" and he has no contact with them whatsoever; he has not spoken with them in years.

In any event, the defendant here faces effectively a sentence of life-imprisonment as did the defendant in *Diaz*. Even if his familial ties were good, and they are not, LeDonne's ostensible ties to his family would be severed if he stayed and was convicted. In either case, his family offers no motivation for LeDonne to stay for trial and his subsequent punishment. Similar to the defendant in *Kisling* (affirmed detention of defendant charged with conspiracy and multiple counts of mail fraud based on prior failure to appear and attenuated community ties, specifically that defendant's family did not wish to associate with him anymore and that defendant was unemployed), the decision of the Magistrate Judge here to detain LeDonne should be affirmed because LeDonne also has a prior incident where he failed to appear and has attenuated community ties because of his alienation towards his family, reputation as a financial predator and fraud in the community, and lack of employment.

Finally, electronic monitoring is not an adequate measure to assure LeDonne's appearance in court. He would have ample lead time in which he could flee, and there are ways to prevent detection of his departure. Because he is a flight risk, the only adequate means to prevent LeDonne from fleeing is detention. LeDonne has failed to appear in court in the past when he was faced with a much lower imprisonment sentence. The long imprisonment sentence he is faced with now, coupled with the strong evidence against him, gives LeDonne an overwhelming temptation to flee rather than face a trial that will have a predictable and severely adverse outcome. He has also shown difficulty in complying with probation conditions, and has displayed a real lack of respect for the law. Time and again he has proved that he cannot be trusted. Hence, there are no conditions or combination of conditions that will reasonably assure the appearance of the defendant. The defendant needs to be detained as a flight risk.

**LeDonne is a financial predator who is a danger to the community**

The legislative history of the Bail Reform Act makes clear that Congress intended that the "safety of the community" concern in § 3142 was expected to be construed as broader than merely danger of harm involving physical violence. S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3195 ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the

13

detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence"). See also *United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993).

Courts have considered economic harm in evaluating danger to the community under § 3142 of the Bail Reform Act. In *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992), the Ninth Circuit observed that "danger may, at least in some cases, encompass pecuniary or economic harm." *Id.* at 192 (referencing *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (danger not limited to physical harm; the concept includes the opportunity to exercise a substantial and corrupting influence within a labor union)); see also *United States v. Parr*, 399 F. Supp. 883, 888 (W.D.Tex. 1975) ("The 'danger to . . . the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large"). See also *United States v. Stein*, 2005 U.S. Dist. LEXIS 28166, 2005 WL 3071272 (S.D.N.Y. Nov. 15, 2005); *United States v. Parr*, 399 F. Supp. 883, 888 (W.D. Tex. 1975) (pecuniary harm); see also *United States v. Moss*, 522 F. Supp. 1033, 1035 (E.D. Pa. 1981) ("It is generally agreed, of course, that a [c]ourt may refuse bail on the ground that a defendant poses a threat to the community even though the threat is pecuniary rather than physical."), aff'd 688 F.2d 826 (3rd Cir. 1982); *United States v. Miranda*, 442 F. Supp. 786, 792 (S.D.Fla. 1977) ("First, it is beyond dispute that the criterion of 'danger to the community,' which is an explicit

component of the Bail Reform Act, is not limited to the potential for doing physical harm.") (citing *United States v. Louie*, 289 F. Supp. 850 (D.C. Cal. 1968)).

The question really is one of propensity to commit further crimes, even if the resulting harm is solely economic. See *Provenzano*, 605 F.2d at 95. This seems to be true even in the cases where pretrial detention is the relevant question. See, e.g., *United States v. Persaud*, 2007 U.S. Dist. LEXIS 25518, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (agreeing that "economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); see also *Gentry*, 455 F. Supp. 2d at 1032 ("[d]anger . . . may be assessed in terms other than the use of force or violence").

In *United States v. Griffin*, No. 2:10-cr-003, 2010 U.S. Dist. LEXIS 37191, 2010 WL 1049228, at *2 (W.D.N.C. Mar. 18, 2010), the defendant pled guilty to bank fraud, aggravated identity theft, access device fraud, and mail fraud. 2010 U.S. Dist. LEXIS 37191, [WL] at * 1. Citing to prior convictions of financial crimes that had created an economic danger to the community, the Magistrate Judge Dennis Howell acknowledged that the defendant was not a physical threat but an economic threat. *Id*. The court denied the defendant's pre-sentencing release, in part, because of the defendant's ability to perpetrate further financial harm while on release. 2010 U.S. Dist. LEXIS 37191, [WL] at *2.

In another case, *United States v. Masters*, 730 F. Supp. 686 (W.D.N.C. 1990), the Honorable Robert D. Potter addressed whether a defendant who had been convicted of twenty-four counts for his participation in a conspiracy to promote

15

bogus tax shelters should be released on bail post-sentencing and pending his appeal. The Court recognized the need to protect the community from the economic threat posed by the defendant, stating:

> In this case, the Court is concerned about the safety of the community if Defendant is released. The unrefuted evidence presented at the sentencing hearing indicates Defendant participated in questionable investment schemes during the pendency of the serious charges in this case. Defendant asserts that he does not pose a physical danger to the community. However, the Court believes it must also consider the danger of a person who continues to participate in possibly fraudulent schemes. See *United States v. Malquist*, 619 F. Supp. 875, 878 (D. Mont. 1985) (non-violent, tax protester defendant denied release pending appeal under § 3143(b) when he demonstrated a militant lack of responsibility). Frankly, the Court believes Defendant is an unrepentent [sic] con-artist who will continue to prey on any person gullible enough to listen to his sales talk. Nothing short of post-conviction incarceration will ensure the safety of the community.

*Masters*, 730 F. Supp. at 689.

James P. LeDonne is also an unrepentant con artist and serial fraudster. LeDonne already has a prior federal conviction for bank and wire fraud in case no. 3:92-CR-52 AS.[1] He has other convictions for theft (1993), forgery – class C felony

---

[1] The facts underlying his prior federal conviction are as follows. LeDonne, then a thirty-nine year old businessman, was the incorporator and manager of a number of distributing and leasing companies engaged in the business of buying and selling wholesale and retail vehicles to various leasing companies, dealers, and rental car companies. His position with the various companies authorized him to make deposits in and write checks on several bank accounts in order to manage the financial transactions involved in procuring and distributing vehicles. Between the months of February and July of 1991, LeDonne contacted various companies from his Elkhart, Indiana office, via telephone or telefax to place purchase orders for vehicles. Knowing that there were insufficient funds to pay for the vehicles, he would assure the sellers that he would provide cash payment in compliance with the purchase agreement. He would then submit payment in the form of an overdraft check and arrange to have the vehicles picked up on a Friday afternoon in order to prevent the seller from confirming whether sufficient funds were available before completing the transaction. When the sellers contacted LeDonne after discovering they had received insufficient funds checks, LeDonne provided ready excuses for the overdraft. He would then sell the vehicles to generate cash knowing, however, that he could not deliver title as the vehicles were not paid for because they had been purchased with overdraft

(1993), auto theft (1993) and check deception (1993). He will soon have an additional pending theft/check deception case pending in Elkhart County, Indiana. His reputation in the community is as a liar, a complete fraud, and a sociopath.

The seventeen-count Indictment here alleges that LeDonne over a six-year period devised and executed a scheme to defraud persons and companies who wanted to purchase and use mobile fiber optic splicing/testing units. LeDonne represented to prospective buyers and more than 65 victims that he could and would produce mobile fiber optic splicing/testing units that were part of trucks, vans, trailers and truck inserts. As part of his scheme, LeDonne demanded and obtained down payments from purchasers to secure an order for the assembly and manufacture of mobile fiber optic splicing/testing units. LeDonne and his several companies then did not deliver the promised units. LeDonne and his representatives promised various delivery dates to victim purchasers that came and went without delivery of a mobile fiber optic splicing/testing unit. LeDonne communicated, including through interstate emails, various excuses for why the units were not delivered as represented and promised. These excuses were false and fraudulent. In fact, the companies operated by LeDonne had little to no real capacity to manufacture the mobile fiber optic splicing/testing units that were part of trucks, vans, trailers and truck inserts. LeDonne also used a series of

---

checks. This scheme formed the basis of the charge of wire fraud. As it became increasingly difficult to support this method of doing business, LeDonne devised a check kiting scheme utilizing various bank accounts throughout Indiana and Michigan and was also convicted of bank fraud. See *United States v. LeDonne*, 21F.3d 1418 (7th Cir. 1994); Presentence Investigation Report, pp. 1-10 (govt. exhibit 1 at Detention Review Hearing 7/16/14).

17

bankruptcies to avoid having to refund monies to victim purchasers.  LeDonne would then create a new company and victimize additional prospective mobile fiber optic splicing unit purchasers through the new company.  Level 4 Technologies LLC filed bankruptcy in 2008.  L6 Engineering Systems LLC filed bankruptcy in December 2010.  LG Engineering & Design Inc. filed bankruptcy in December 2013.  LeDonne made false statements and caused others to make false statements in those bankruptcy proceedings.

LeDonne even obtained a trailer already built and delivered to a customer in 2007 in Indiana under the guise of a recall in the first half of 2012.  LeDonne then delivered this used (stolen) trailer to an unsuspecting LG Engineering & Design Inc. customer in Georgia in the summer of 2012.  As part of the fraud, LeDonne issued a new vehicle identification number for the stolen trailer so the Georgia customer could register and plate the trailer.

Moreover, it appears that LeDonne was just prior to his arrest in May 2014 attempting to continue to defraud new potential investors and new victim companies who need fiber optic splicing units.  Evidence uncovered during the execution of a federal search warrant on May 9, 2014 showed that LeDonne re-badged himself yet again – this time under the name Paragon Technologies Group Inc., was seeking to obtain monies from new investor victims, and was soliciting in 2014 more down payments from new victims seeking to purchase fiber optic splicing units.

The Court in *United States v. Gill*, 2008 U.S. Dist. LEXIS 120659, 2008 WL 2120069 (E.D. Cal. May 20, 2008), relied on similar factors to detain the defendant, explaining:

> Given Gill's criminal record, this last indictment demonstrates that the safety of the community cannot be reasonably assured by further conditions. Gill has been previously convicted of three incidents of cashing insufficient funds checks (two felonies and one misdemeanor); he also presented a false claim in Yuba County for which Gill reports he received probation. Combining in the analysis the past criminal record with the first federal fraud indictment, and now the second federal fraud indictment, the [court] additionally finds, although by the words of the statute no finding is necessary, that conditions of release are unlikely to deter Gill from further misconduct.

*Id*.

Defendant LeDonne should be detained as a danger to persons and entities in the community because he is a complete con man, financial predator, and serial fraudster. LeDonne should also be detained as a flight risk because he faces a long prison sentence (given large losses to victims and prior fraud convictions), he is a pathological liar, and he cannot be trusted to appear. Indeed, he simply cannot be trusted at all.

Dated: July 15, 2014

                              Respectfully submitted,

                              DAVID CAPP
                              UNITED STATES ATTORNEY

                By:   s/ Donald J. Schmid
                        Donald J. Schmid
                        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that on July 15, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to defense counsel of record.

                                          s/ Sally J Fox
                                          United States Attorney's Office
                                          204 S. Main Street, Room M01
                                          South Bend, IN 46601
                                          574-236-8287