UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:14-CR-055 JD |
| | ) | |
| JAMES LEDONNE | ) | |

**OPINION AND ORDER**

After being indicted on seventeen charges, including charges for transportation of stolen goods, wire, mail, and bankruptcy fraud, and conspiracy to commit mail and wire fraud, the Magistrate Judge ordered defendant James LeDonne detained as a risk of flight [DE 12, 14]. Since that time, the undersigned has held two detention review hearings and three times denied Mr. LeDonne's attempts to be released [DE 65, 94, 152]. Most recently, the Court determined that it did not foresee *any* combination of conditions that would reasonably assure Mr. LeDonne's appearance given his substantial risk of flight [DE 152]. Despite these rulings, Mr. LeDonne has again asked the undersigned to reopen the detention hearing and review the order of detention. Mr. LeDonne, by counsel, claims that new information has become available which has material bearing on the issue of whether there are conditions of release which would reasonably assure Mr. LeDonne's appearance. The Court disagrees.

As indicated in the Court's prior orders, the Bail Reform Act limits the circumstances under which a district court may order pretrial detention. As an initial matter, Mr. LeDonne has only asked that the Court consider "whether there are conditions of release" that would reasonably assure his appearance [DE 225]. This makes sense because nothing significant enough has changed such that the release of Mr. LeDonne on his own recognizance or an unsecured bond would reasonably assure the appearance of his person, consistent with 18 U.S.C.

§ 3142(b). For that reason, the Court incorporates its previous determinations [DE 65, 94, 152] in this respect. The next step is to determine if "information exists that was not known to the movant at the time of the hearing[s] and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required," such that the detention hearing should be reopened, 18 U.S.C. § 3142(f), or that would indicate certain conditions should be imposed and defendant released, 18 U.S.C. § 3142(c). The United States bears the burden of proving by a preponderance of the evidence that defendant is a flight risk.[1] *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985).

Mr. LeDonne contends that his detention hearing ought to be reopened and he is no longer a flight risk because: his potential sentence is much lower than previously calculated; he has reestablished a relationship with his family; he no longer has funds available; he would use his freedom to assist counsel in preparing for his defense; and, he could be released to a South Bend residence owned by a "family friend," where Mr. LeDonne could stay rent-free and have the necessary electronic monitoring equipment installed [DE 225, 226, 235].

The Court assumes familiarity with the entire case record, including the Government's previous introduction of credible evidence that while in jail, Mr. LeDonne was able to access significant funds and communicated with others willing to assist him at some level. While Mr. LeDonne may no longer have access to funds (which he has been claiming all along), he has managed to continue convincing others to assist him outside of the jail—as evidenced by his now having a "family friend" willing to allow Mr. LeDonne to live rent-free at his place. Additionally, Mr. LeDonne's renewed argument that placement on electronic monitoring will

---

[1] Being a danger to the community is not at issue in this case. *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985).

reasonably assure his appearance still fails to alleviate an ongoing concern expressed by the Court—that is, "location monitoring without more [is] merely a deterrence to escape and insufficient to reasonably assure appearance given the strong risk of flight." [DE 65 at 7, 94 at 2, 152 at 3][2]. Once again, the latest proposal that Mr. LeDonne could be monitored by BI, Inc. from a residential location still does not assuage these concerns. Ankle bracelets, which can easily be cut off, are no more effective today in assuring Mr. LeDonne's appearance than when the Court issued its last order (or the orders before that). And having probation monitor the residence with periodic inspections is even less effective.

In addition, Mr. LeDonne's reestablishing a relationship with his children and likelihood of receiving a lesser sentence (arguments he has also been making all along), do only so much to reduce his risk of flight. Assuming Mr. LeDonne could successfully argue for the application of sentencing guidelines which have been amended and which could result in his facing a lesser sentencing range of seven to nine years of imprisonment, rather than twenty years as previously calculated,[3] Mr. LeDonne still faces significant prison time. The term of imprisonment that Mr. LeDonne faces (even by his own calculations) is longer than any sentence he has ever served in the past. Moreover, the Court does not believe that renewed family ties do much to lessen Mr. LeDonne's flight risk. Mr. LeDonne's criminal history, even though somewhat dated, involves a

---

[2] The Court previously refused to release Mr. LeDonne to an extended stay hotel or a rented room in the area, where BI, Inc. would have provided electronic location monitoring services involving instantaneous notification at all hours if Mr. LeDonne left a designated location or tampered with the monitoring device.

[3] The defense argues that as a result of amendments made to the guidelines with respect to crimes of fraud (since the last time the government estimated Mr. LeDonne's likely sentence), Mr. LeDonne would receive a smaller enhancement for the amount of loss under §2B1.1(b)(1), he would no longer receive a four level enhancement under §2B1.1(b)(2) as it relates to victims because arguably the victims did not suffer a "substantial financial hardship" as now required, and he would no longer receive a two level enhancement for sophisticated means under §2B1.1(b)(10) because such an enhancement now requires the defendant to have "intentionally engaged in or caused the conduct constituting sophisticated means."

string of prior felony convictions for crimes which call into question his trustworthiness, including theft, forgery, and fraud [DE 6].  Additionally, Mr. LeDonne has failed to appear in prior state court proceedings, which call into question his attitude toward pretrial release conditions and reveal a lack of respect for court orders.

Ultimately, the Court is not persuaded that the circumstances presented by Mr. LeDonne are "new" or "material" such that the detention hearing ought to be reopened under 18 U.S.C. § 3142(f).  Rather, Mr. LeDonne is trying to put a new spin on facts which were previously asserted and/or do not materially bare on the issue of whether conditions of release would reasonably assure Mr. LeDonne's appearance.  And as stated more fully in the Court's previous orders [DE 65, 94, 152], the factors under section 3142(g) weigh heavily in support of the conclusion that Mr. LeDonne is a substantial risk of flight.  The Court's prior rationale still holds true in that Mr. LeDonne's ties to this community are severely strained given the number of alleged victims, the government's case on a series of serious charges appears to be relatively strong, if convicted Mr. LeDonne faces a substantial sentence (even by his own estimate), Mr. LeDonne's past conduct evidences a disregard for the law, and the Court does not believe that Mr. LeDonne's staying at a friend's residence while monitored by BI, Inc. provides him any incentive to stay if released given the other evidence supporting a strong motive to flee.  Based on the record, the Court continues to believe that no foreseeable condition or combination of conditions will reasonably assure the presence of Mr. LeDonne.  Accordingly, the Court DENIES Mr. LeDonne's request to reopen the detention hearing and to reconsider the order of detention [DE 225].

The Court would also note that defense counsel's asserted need to have Mr. LeDonne present for purposes of reviewing a vast amount of documentary/electronic evidence and

4

preparing for Mr. LeDonne's defense is not compelling.  The defense has the ability to request and receive the assistance of paralegals, experts, and other services needed for the purpose of extracting and reviewing discovery.  To date, no such request for expert or other services has been received from current counsel.  Further, there is nothing preventing defense counsel from seeking Mr. LeDonne's input throughout the process of reviewing discovery, despite Mr. LeDonne's incarceration.  Ultimately, Mr. LeDonne has not offered any evidence that his detention would deny his having a reasonable opportunity for private consultation with his defense counsel to prepare for trial, as required by 18 U.S.C. § 3142(i)(3).  Nor does Mr. LeDonne's need to prepare for trial have anything to do with lessening his risk of flight.

Finally, to the extent the defense alludes to the length of Mr. LeDonne's pre-trial detention as being problematic [DE 226 at 6-7, 235], any delays in having this case tried by a jury are of Mr. LeDonne's own making—he is currently being represented by his sixth defense attorney and has sought five continuances of trial.  His latest request for a continuance has been taken under advisement by the Court, while defense counsel and Mr. LeDonne continue to review discovery and better evaluate the time needed to effectively prepare for trial without unjustified delay.  And to be perfectly clear, Mr. LeDonne is being detained to prevent his significant risk of flight from the jurisdiction, not for any other purpose including punishment.

SO ORDERED.

ENTERED:  July 13, 2016

        /s/ JON E. DEGUILIO
Judge
United States District Court