UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 3:14 CR 55 |
| | ) | |
| | ) | |
| JAMES LEDONNE | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by Clifford D. Johnson, Acting United States Attorney for the Northern District of Indiana, and submits the following memorandum pursuant to the Court's order (DE #329).

1.  **Background**

A grand jury returned an indictment charging the defendant with eleven counts of wire fraud; three counts of mail fraud; one count of conspiracy to commit fraud; one count of interstate transportation of stolen goods; and one count of bankruptcy fraud. For the wire and mail fraud counts, the indictment described how the defendant engaged in a scheme to defraud from 2008 through 2014 by accepting down payment money from customers and failing to fulfill orders.

From 2008 through 2013, the defendant controlled a series of companies that manufactured trailers and modified vehicles involved in fiber optic repair. The charged scheme involved the defendant (and others) telling lies to customers about production schedules, delivery dates and refunds, and the defendant using a series of bankruptcies to avoid returning money to the customers. (DE #1) In April

1

2017, the defendant pled guilty to one count of wire fraud and one count of mail fraud.

The Presentence Report has calculated a total offense level of 31 based upon:

| | | |
|---|---|---|
| Base Offense Level | 7 | |
| Loss Amount | 16 | (more than $1.5 million) |
| 10 or More Victims | 2 | |
| Misrepresentation During Bankruptcy | 2 | |
| Leadership | 4 | |

The defendant concedes the loss amount is at least $550,000. He believes some of the transactions do not fall within the definition of relevant conduct. The defendant also admits a leadership role applies but suggests that only two-levels should be applied to the offense level. He objects to adding two-levels for making misrepresentations during the different bankruptcy proceedings and requests a lower criminal history category.   The government agrees with the calculations but objects to the failure to add two-levels for obstruction of justice.

The addendum to the Presentence Report provides factual and legal information that should assist the Court in deciding the issues. At the evidentiary hearing, the government will call former employees to establish the leadership role. Other witnesses (agents, bankruptcy trustees and a victim) will provide additional information supporting the loss amount and restitution.

2.  **§ 3553(e) Factors**

The Court must take into account the factors set forth in 18 U.S.C. § 3553(a), including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the sentencing range established for the applicable category of offense committed by the applicable category of defendant; (4) the pertinent Sentencing Commission policy statements; (5) the need to avoid unwarranted sentencing disparities; (6) the need to provide restitution to victims; and (7) the need for judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care. A careful consideration of the § 3553(a) factors weighs in favor of a sentence within the recommended advisory Guidelines range.

    A.  **Sentencing Guidelines Range**

        i. **Calculation of Loss Amount**

The Presentence Report describes 64 transactions involving the defendant accepting down payment money but failing to deliver promised products. (PSR, DE #335, paragraphs 7-81; 84)   As noted in the defendant's objections, the undisputed loss amount is at least $550,000. (PSR Addendum, DE #332, page 10)   Notably, the defendant does not contest the fraudulent nature of 41 transactions involving L&H Engineering & Design ("L&H") and LG Engineering & Design ("LG Engineering").

3

He objects to the transactions involving Level 4 Technologies ("Level 4") and L6 Systems ("L6") claiming they are not part of the "common scheme or plan depicted by the Government in its indictment" and were simply civil actions involving breach of contract claims. (PSR Addendum, DE #332, pages 8; 10)

For the unchallenged facts, "the court may rely on the PSR." *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008). The defendant claims only a few facts contained in the Presentence Report are erroneous or unreliable.

The offense conduct includes all acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2); see *United States v. Johnson*, 643 F.3d 545, 551 (7th Cir.2011) (upholding use of uncharged and unconvicted relevant conduct that was part of the same course of conduct or common scheme or plan as the offense of conviction). The Level 4 and L6 transactions (listed at paragraphs 11-39 of the Presentence Report) are part of the charged scheme and should be counted in determining the loss amount. These customers were victimized by the defendant in the same manner as the victims during the L&H and LG Engineering time period.   In particular, the defendant entered into sales agreements with the Level 4 and L6 customers.   They paid money to the defendant for vehicles and trailers, and—most importantly—the defendant, or his employees at the defendant's direction, made false statements about delivery dates, production schedules, the existence of vehicles that were being shipped, and refunds that were supposed to be issued.

4

A former payroll clerk at Level 4, who loaned the defendant $30,000 to keep Level 4 afloat, observed the defendant taking customer orders knowing there was no possibility of manufacturing anything because the defendant had stopped paying his suppliers.   According to the clerk, the same thing occurred while the defendant operated L6.   The numbers back this up:   The undisputed evidence shows the defendant accepted deposits from 19 L6 customers totaling almost $590,000 in a 13-month period.   The defendant repeatedly lied to customers and delivered nothing. (PSR, DE #335, paragraphs 17-39; 84)

The fact that Level 4 and L6 had legitimate transactions does not negate the fact that fraudulent misrepresentations were made to other Level 4 and L6 customers. Also, it should be noted that there were successful, legitimate transactions made during the LG Engineering time period—a time period during which the defendant concedes the fraud scheme was occurring. Thus, the existence of legitimate business transactions should not negate the nature of a fraudulent scheme that occurs during the same time period.

In addition, the scheme described in the indictment alleged the defendant used the bankruptcy system to avoid refunding money to customers. As part of the scheme, the defendant provided false documents and made false statements during the proceedings. Through this fraudulent use of the bankruptcy process, the defendant would file bankruptcy for one business entity—but would continue his operations under a new business with very little break in taking orders and

receiving down payment money. This pattern occurred with Level 4 and L6 and ended with LG Engineering. Accordingly, the Level 4 and L6 transactions are all part of the one scheme charged in the indictment and should be counted in determining the loss amount.

Although the defendant does not dispute the fraudulent nature of the LG Engineering transactions, he believes a credit should be applied against the loss amount because two victims eventually received a vehicle. The government disagrees. The loss calculated for sentencing should be the greater of the actual or intended loss.   See, USSG 2B1.1, cmt. 3(A).   The intended loss was the amount of money that the defendant took in down payments from the victims, while never delivering the promised product or refund.   In addition, the specific victims identified by the defendant in his response to the Presentence Report had actual losses greater than the characterization by the defendant in his response. For example, the defendant states that Light Ride obtained a trailer and continued to utilize the trailer.   This is not so—the trailer obtained by Light Ride was victim Accelerated Networks's trailer, which Light Ride never used.   As for Accelerated Networks, the trailer it was given by the defendant was in such poor condition that Accelerated Networks could not use it.

Moreover, for victim Vorcom, the defendant should not receive any credit. The defendant promised to a deliver a vehicle with title. He accepted $60,000 from Vorcom but did not produce the title because he had not paid the manufacturer.

6

After providing the vehicle, the defendant refused to refund the $60,000, he failed to deliver the title and a second vehicle bought by Vorcom (Vorcom paid $30,000 for the second vehicle), and he ignored various court orders during civil litigation. Eventually, after approximately four years and an estimated $50,000 in attorney fees, Vorcom obtained a title for the one single vehicle in its possession through their own efforts by filing for a mechanics lien. The Guidelines do not require a credit under these circumstances. See USSG 2B1.1, cmt. 3(E).   The same argument applies to victim Pinetree.

In his response to the Presentence Report, the defendant argues that the loss amount should not include the Roger Roy investment.   The unchallenged facts reveal the defendant lured Roy into the investment with false information about LG Engineering's financial status.   (PSR, DE #335, paragraph 82)   Relevant conduct includes all actions "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). The defendant does not challenge that the LG Engineering transactions are part of the fraud scheme. Those transactions occurred from March 2012 through September 2013.   (PSR, DE #335, paragraph 84)   During the same time period, while defrauding LG Engineering customers, the defendant convinced Roy to inject more than $120,000 into the business through lies and false documents about LG Engineering's financial status.   In particular, the defendant presented to Roy spreadsheets

7

showing many of the LG Engineering victim transactions after the defendant had already swindled these victims by taking their deposits without intending to produce vehicles—and these transactions were characterized to Roy as legitimate and completed business sales.   This occurred during the offense of conviction, and occurred because the defendant was trying avoid detection for the fraud scheme. It is anticipated that Roger Roy will testify at the hearing.   His loss should be included in the loss calculation.

## ii.  **Obstruction of Justice**

Two-levels should be added to the offense level because the defendant provided (or attempted to provide) false information to the pretrial services officer. Success in deceiving a pretrial services officer is not required. *United States. v. Owolabi*, 69 F.3d 156, 163-64 (7th Cir. 1995). The enhancement is not limited to information provided to prepare a presentence report. USSG § 3C1.1, cmt. 4(H)("providing materially false information . . . in respect *to other investigation for the court.*"); *United States v. Ojo*, 916 F.2d 388, 390, 392–93 (7th Cir. 1990)(affirming a district court's decision to apply obstruction of justice to a defendant who provided false information to the "pretrial services officer, who was conducting a bail investigation for the court, falls squarely within the application note.") Material information means that "if believed, would tend to influence or affect the issued under determination."   USSG § 3C1.1, cmt. 6.

As shown below, the false information concerning the defendant's debt

situation did hinder the officer's bond assessment. The defendant told the officer he only had mortgage and automobile debt. She relied on those representations in preparing the Pretrial Services Report and recommending the defendant's release. The report did not reflect that the defendant owed hundreds of thousands dollars to others. (DE #6, page 2); (Transcript of Detention Hearing Transcript, May 22, 2015, pages 33-34)   During this Court's review of the detention order, the officer explained what happened during the interview with the defendant.

> Q. Did he say he had any liabilities over and above the thousand dollar medical bills and the mortgage on his house and two vehicles?
>
> A. No.
>
> Q. Did he tell you that he had been the subject of a lawsuit or lawsuits?
>
> A. No.
>
> Q. Did he tell you that there were outstanding judgments against him for hundreds of thousands of dollars?
>
> A. No.
>
> Q. Did he tell you that he owed on promissory notes in the amount of hundreds of thousands of dollars?
>
> A. No.

(PSR Addendum, DE #332, page 24).   After hearing the testimony about the defendant's debt situation, the officer told the Court that it caused her to change her mind about setting bond.

> THE COURT:
> I would like to ask you a question; and to the extent that raises questions by counsel, they will have an opportunity to do so. In your

>Pretrial Services Report, dated May 19, 2014, you appear to recommend Defendant's release on unsecured bond and with certain reporting and trial restrictions.

THE WITNESS:
>Right. Based on the information he provided, yes.

THE COURT:
>Based on what you now view maybe as – I don't want to put words in your mouth -- do you view today the information he gave you then to be inconsistent with what you have determined the facts are?

THE COURT:
>And based on questioning it would appear that would be based on criminal history and financial disclosures?

THE WITNESS:
>Right.

THE COURT:
>Anything else?

THE WITNESS:
>I think that's it.

THE COURT:
>And does that change your opinion about your recommendation as to whether or not he should be released and, if so, pursuant to what conditions he would be released?

THE WITNESS:
>Based on -- I've been through the detention hearings prior, and, yes, I believe I would recommend detention now.

THE COURT:
>For what reason?

THE WITNESS:
>I think financial. He's a financial risk.

THE COURT:
>How so?

> THE WITNESS:
>> Just basically the fraud that he's being accused of and lying and seeing that he has a lot more than he stated.

*Id.* at 27-28. When questioned by the defendant's attorney, the officer reiterated the defendant's lies and poor financial situation caused her to re-evaluate her position.

> Q: What other financial information that you now know leads you to believe that those conditions would no longer be available to Mr. LeDonne?
>
> A. Well, listening to the judgments; being in the detention hearings; listening to how much he does owe and withheld that information. So I couldn't give an accurate decision during that time.

*Id.* at 30. Later, when asked to review the bond conditions again, the officer recommended detention noting: "The defendant provided false information during the pretrial services interview about his finances." (DE #229, page 1).

### iii. Misrepresentations Made During Bankruptcy

Two-levels should be added to the offense level because "the offense involved a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding." USSG § 2B1.1(9)(B).[1] Relevant conduct includes all acts committed "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

---

[1] The language of § 2B1.1(9)(B) does not require "materiality"--meaning the misrepresentation does not have to potentially influence the bankruptcy court or trustee. The government did not find any cases requiring materiality either. In any event, materiality is easily established.

11

USSG § 1B1.3(a)(1).

The Presentence Report states the defendant made misrepresentations during three bankruptcy hearings. (PSR, DE #335, paragraphs 85-89)   The Court only has to find the defendant made one misrepresentation to apply the enhancement.

The unchallenged facts establish the defendant made two misrepresentations during the LG Engineering bankruptcy proceedings. First, he provided a document to the trustee falsely listing customers who had allegedly received their products in support of his accounts receivables. (PSR, DE #335, paragraphs 85-86)   Second, while under oath, the defendant twice told the bankruptcy trustee that he had "delivered" the listed products.   *Id*.

Regarding the L6 bankruptcy, the trustee asked the defendant questions about Vistacare (a victim) and a $115,000 deposit provided to L6.   The unchallenged information shows the defendant lied about how he used the deposit funds and his intent to deliver the vehicle. (PSR, DE #335, paragraphs 87-88)

As for Techline bankruptcy, the Presentence Report confirms the defendant provided false information when he filed a monthly report (under oath) that did not list $64,362 of proceeds obtained from the sale of the truck to El Oso.   (PSR, DE #335 at paragraph 89)   The unchallenged information reveals the defendant knew the truck belonged to the Techline banktuptcy estate but sold it through L6. When the trustee decided to sell the truck, the defendant convinced El Oso to return the

12

truck through false statements. (PSR, DE #335, paragraphs 18-20)

### iv. Leadership Role

The addendum to the Presentence Report provides the factual and legal support for a four-level enhancement. At the hearing, former employees will testify the defendant played a domineering role in running the businesses. He told these employees to create fake documents[2] and lie to customers on a regular basis. Further, many other employees either knowingly or unknowingly provided false information to customers during the scheme.

### v. Criminal History

The Presentence Report assesses 3 points each for the defendant's theft and forgery convictions. (DE #332, paragraphs 117-120)  Prior sentences are always counted separately if the offenses were separated by an intervening arrest which means the defendant was arrested for the first offense prior to committing the second offense. USSG § 4A1.2(a)(2).  The addendum contains information about the theft and forgery convictions. (DE #332, page 20)  The probation officer  possesses additional information about the convictions that confirm an intervening arrest: The defendant was arrested on August 9, 1989 for theft. He committed forgery on October 26, 1989.  The two convictions should be counted separately.

Whether the theft and forgery convictions are counted is entirely dependent

---

[2] Some of the fake documents included creating ads giving the impression that one of the defendant's companies owned a particular vehicle.  (See, Santiago Proffer, DE #316, pages 12-13)

13

on the Court's conclusions with respect to relevant conduct. The Presentence Report includes relevant conduct for the counts of conviction going back to 2008. For a conviction to be counted, the defendant "had to have been still serving a sentence of imprisonment on that conviction within 15 years of his commencement of the offense of conviction in this case." *United States v. Marks*, 864 F.3d 575, 577 (7th Cir. 2017) (citing USSG § 4A1.2(e)(1)). According to application note 8 to § 4A1.2, "the term `commencement of the instant offense' includes any relevant conduct." The unchallenged information indicates the defendant was released from the Indiana Department of Corrections on August 25, 1995. (DE #335, paragraph 121) Thus, the convictions are counted if the Court determines any of the relevant conduct before August 25, 2010.

If the Court determines the defendant's criminal history category to be less category IV, an upward departure may be warranted because "reliable information indicates that the criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG §4A1.3(a)(1). In assessing whether to depart, the Court can consider "prior sentences not used in computing the criminal history category." USSG §4A1.3(a)(2)(A).

> B. **The Nature and Circumstances of the Offense, the History and Characteristics of the Defendant and the Need to Impose a Sentence that Reflects the Seriousness of the Offense**

The defendant has earned a long sentence. He is a gifted conman. He

14

has the rare ability to convince others to part with money and hold them off for long time periods. In the end, the defendant defrauded 64 customers and at least one investor of more than 1.5 million dollars. He caused others to lie for him. He has a long history of lying, cheating and stealing. He does not appear to be remorseful. At the sentencing hearing, victim impact statements will describe how the defendant's actions caused significant financial harm.

### C. The Sentence Must Promote Respect for the Law, Deter Others from Committing Crime, and Deter this Defendant from Committing More Crime

The defendant has no respect for the law. Taking an oath means nothing. It is quite apparent that the criminal justice system, so far, has not been able to deter this defendant from committing crime. Other than incarceration, there is very little that can done to stop him from committing more crime.

### 3. Restitution

The Mandatory Victim Restitution Act (MVRA) allows restitution beyond the offense of conviction when the offense contains as an element a scheme or pattern of criminal activity. 18 U.S.C. § 3663A(a)(2). The mail and wire fraud statutes contain a scheme element. To determine restitution, the Court must look at the charged scheme and "the specific temporal scope of the indictment." See *United States v. Inman*, 411 F.3d 591, 595 (5th Cir.1995); *United States v. Morrison*, 685 F.Supp.2d 339, 349 (E.D.N.Y. 2010)(restitution for the underlying

15

scheme is limited to the time period stated in the indictment). Under the MVRA, a "victim" of a scheme, conspiracy, or pattern of criminal behavior is defined as "any person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). A district court must order restitution where "an identifiable victim or victims has suffered a... pecuniary loss." *Id.* § 3663A(c)(1)(B).

For the mail fraud and wire fraud counts, the indictment states the scheme lasted from 2008 through 2013. (DE #1) The chart below represents the pecuniary harm suffered by each victim, which was the down payment provided to the defendant. The government acknowledges that the amount of restitution for three victims (Vorcom, Lightride, and Pinetree) may need to be reduced because these victims eventually received a vehicle or trailer. A final calculation will be provided at sentencing, or within 90 days of the hearing.

| | |
|---|---:|
| SOS Communications | $30,762.50 |
| HP Communications | $25,000.00 |
| Maryland Broadband Cooperative | $24,450.00 |
| Skyline Network Engineering LLC | $21,500.00 |
| Bluestone Communications | $31,000.00 |
| El Oso | $64,362.00 |
| Fort Mojave Telecommunications | $7,500.00 |
| **Pine Tree Telephone/Otelco** | **$72,500.00** |
| STM Group/Salim Group Inc | $35,060.50 |
| Cochran Communication Construction | $23,100.00 |
| Great Plains Communications | $9,750.00 |
| KCI/Allstate Leasing | $19,500.00 |
| Cambridge Telephone Co | $19,000.00 |
| M&A Electric | $9,410.00 |
| FairPoint Communications | $16,499.00 |
| Fibore Technologies | $9,500.00 |
| Fibertech | $27,500.00 |

| | |
|---|---:|
| Western Tel-Com | $16,500.00 |
| Townes Communications | $15,500.00 |
| Vistacare | $114,980.00 |
| Franklin Telephone | $20,802.00 |
| 3 Rivers Telephone Company | $25,436.00 |
| Compania Dominicana | $52,000.00 |
| Spectrum Advantage | $11,697.77 |
| City of Lakeland | $50,250.00 |
| **Vorcom Internet Services Inc** | **$90,000.00** |
| **LightRide Communications** | **$7,600.00** |
| Accelerated Networks | $32,000.00 |
| Reservation Telephone | $10,750.00 |
| Great Lakes Comnet | $23,500.00 |
| Citizens Telephone Cooperative | $9,250.00 |
| Stark Leasing | $16,500.00 |
| Veracity Construction | $10,000.00 |
| Fiber Connection | $7,044.00 |
| LeCom | $16,500.00 |
| Daniel Utility | $8,250.00 |
| OPTX Inc | $15,000.00 |
| World Fiber Technologies | $12,500.00 |
| Apachi Networks | $22,500.00 |
| Union Telephone Company | $8,950.00 |
| WestStar TV Ltd | $29,250.00 |
| Sherwood Mutual Telephone | $7,625.00 |
| Southwest Minnesota Broadband Service | $7,450.00 |
| Bayring Communications | $19,250.00 |
| Mid Century Telecom | $5,000.00 |
| Madison Communications | $5,750.00 |
| Bermuda Cable Vision | $33,000.00 |
| Enventis/Hickory Tech | $17,250.00 |
| Walser Leasing | $84,500.00 |
| American Cable Services | $15,800.00 |
| C.C.U. Inc. | $4,650.00 |
| Aero Communications | $37,000.00 |
| Drew Communications | $34,735.00 |
| The Fishel Company | $14,725.00 |
| Jones Communications | $8,000.00 |
| Egan Company | $14,750.00 |
| Basin Electric Power Cooperative | $10,000.00 |
| Southern Light | $9,250.00 |

| | |
|---|---|
| WideOpenWest | $57,841.54 |
| North Slope Telecom | $29,200.00 |
| Poka Lambro Telephone | $10,750.00 |
| Spliceworks | $9,750.00 |
| C R Action Cable | $6,250.00 |
| Ripley's Inc | $35,000.00 |
| Roger Roy | $120,900.00 |

4. **Conclusion**

The Court should impose a sentence at the mid-level of the applicable range recommended by the Guidelines if the criminal history category is category IV. If the criminal history category is less than IV, the Court should depart upward, place the defendant into category IV, and impose a sentence at the mid-level of the applicable range. Further, pursuant to the MVRA, the Court shall order the defendant to pay full restitution to the victims listed above.

Respectfully submitted,

CLIFFORD D. JOHNSON,
ACTING UNITED STATES ATTORNEY

S/ Gary T. Bell
Gary T. Bell
Assistant United States Attorney
Northern District of Indiana

S/ Luke Reilander
Luke Reilander
Assistant United States Attorney
Northern District of Indiana

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/EFC system which sent notification of such filings to counsel of record.

S/Lorene B. Nelson<br>
Lorene B. Nelson<br>
Legal Assistant