UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:14-CR-55 JD |
| JAMES P. LEDONNE | |

**OPINION AND ORDER**

James LeDonne pleaded guilty to one count of wire fraud and one count of mail fraud. The Court sentenced him to 168 months of imprisonment. Mr. LeDonne now moves to vacate his conviction and sentence under 28 U.S.C. § 2255, asserting seven grounds on which he claims relief. Mr. LeDonne has also filed two motions seeking leave to amend his motion to vacate under § 2255. For the following reasons, the Court denies each of Mr. LeDonne's motions.

**A.    Factual Background**

From 2008 until 2014, Mr. LeDonne orchestrated a scheme to defraud purchasers of mobile fiber optic splicing and testing units. First, Mr. LeDonne represented to prospective buyers that his company could produce the units. He then demanded significant down payments from these purchasers, typically around fifty percent of the total price. In actuality, Mr. LeDonne's company had no capacity to manufacture the units. When refunds were ultimately sought by the victims, some through court judgments, Mr. LeDonne's company would declare bankruptcy to avoid payment. Instead of ceasing to defraud his victims, Mr. LeDonne would create a new company to continue his scheme. By the time of his arrest in 2014, Mr. LeDonne had used six companies to defraud his victims, who had lost more than 1.5 million dollars. (DE 335; DE 360.)

Due to the number of claims for relief brought by Mr. LeDonne, the Court believes it helpful to recount the procedural history in detail. On May 14, 2014, Mr. LeDonne was indicted on 17 Counts for wire fraud (Counts 1–11), mail fraud (Counts 12–14), conspiracy to commit fraud (Count 15), interstate transportation of stolen goods (Count 16), and bankruptcy fraud (Count 17). (DE 1.) Mr. LeDonne was arrested on May 19, 2014, and has been continuously detained since then. (DE 4.) The ensuing proceedings were unusually prolonged, due in large part to multiple withdrawals of defense counsel caused by irretrievable breakdowns in communications with Mr. LeDonne. Mr. LeDonne was represented by six different attorneys before he entered his guilty plea. (DE 10, 26, 114, 173, 190, and 203.) Each time new counsel was appointed, trial had to be continued to allow new counsel adequate time to prepare.

Trial was also postponed when the Court ordered a competency evaluation on defense counsel's motion. (DE 287.) Mr. LeDonne underwent a competency evaluation by Dr. Michael Fogel. Dr. Fogel conducted a forensic clinical interview with Mr. LeDonne, reviewed Mr. LeDonne's medical records, and spoke with a number of individuals, before concluding that "Mr. LeDonne does not presently suffer from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." (DE 301 at 10.) The Court agreed with Dr. Fogel and found Mr. LeDonne competent to stand trial. (DE 309.)

Shortly after the Court found Mr. LeDonne to be competent and set a new trial date, Mr. LeDonne pleaded guilty to two counts: Count 8, a wire fraud charge based on an email sent in March 2013; and Count 14, a mail fraud charge based on a check mailed in May 2013. (DE 320.) He entered this plea without the benefit of a plea agreement. (Change of Plea Hr'g Tr., DE 379 at 34.) At the change of plea hearing on April 19, 2017, Mr. LeDonne was represented by his sixth

counsel, Mr. Visvaldis Kupsis. (DE 320.) Prior to the hearing, Mr. Kupsis conveyed one plea offer from the government to Mr. LeDonne. (Change of Plea Hr'g Tr., DE 379 at 8.) This plea offer was a binding plea agreement in which Mr. LeDonne would serve 108 months in jail. (Letter from Visvaldis P. Kupsis, DE 476-1 at 6; Gov't Response to § 2255 Motion, DE 480 ("A 108-month plea offer was made by the government in late 2016 and early 2017.").) However, Mr. LeDonne rejected the government's 108-month offer. (Change of Plea Hr'g Tr., DE 379 at 8.) The Court accepted Mr. LeDonne's guilty pleas and adjudged him guilty of Counts 8 and 14. (DE 320.)

The Probation Department prepared a Draft Presentence Investigation Report ("PSR") and both the government and the defense submitted objections. (DE 325; DE 326; and DE 327.) The Court resolved the PSR objections and calculated an applicable advisory guideline range of 168 to 210 months of imprisonment. (DE 360.) Prior to sentencing, but after the Court resolved the PSR objections, Mr. LeDonne notified the Court that he now wanted to withdraw his guilty plea, eight months after making it. (DE. 368.) The Court then appointed a seventh attorney, Mr. Rodolfo Monterrosa, for the purpose of arguing the motion to withdraw the plea. (DE 368; DE 369.) Mr. LeDonne made two arguments: (1) that Mr. Kupsis was ineffective as counsel, and (2) that he did not make his plea "knowingly and voluntarily." (DE 389 at 4.) The Court denied the motion. (DE 398.) Afterwards, Mr. LeDonne requested that Mr. Kupsis continue as his counsel, even though his previous motion was premised on Mr. Kupsis' alleged ineffectiveness. (DE 404.)

On August 3, 2018, more than four years after his indictment was handed down, Mr. LeDonne was sentenced to 168 months imprisonment and one year of supervised release. (DE 417.) Mr. LeDonne then appealed his conviction and sentence to the Seventh Circuit. His only

argument on appeal was that the district court erred by imposing an obstruction of justice enhancement for statements made by Mr. LeDonne during an interview with a pretrial services officer. (Appellant's Br., 7th Cir. Case No. 18-2729, DE 24 at 25.) During that interview with the probation officer, Mr. LeDonne "denied and later minimized his criminal history, misrepresented his monthly income, and neglected to divulge the outstanding civil judgments against him." *United States v. LeDonne*, 795 F. App'x 472, 473 (7th Cir. 2020). Mr. LeDonne argued that this omission was not material and was the result of "confusion." *Id.* The Seventh Circuit rejected these arguments, finding that the omission was "most certainly material" and that it was reasonable to find that this omission was "clearly intentional" given "the years he spent in prison for prior fraud convictions." *Id.* at 474.

On April 15, 2021, Mr. LeDonne moved to vacate his conviction and sentence under § 2255. Mr. LeDonne made this motion without the benefit of counsel. However, in the motion, he requested that Counsel be appointed. He seeks relief under numerous different theories, many of them already previously argued:

**Ground I** – Ineffective Assistance of Counsel (DE 476 at 16–24);

**Ground II** – New Evidence Showing an Incorrect Finding Concerning a Bankruptcy Proceeding (*Id.* at 25–26);

**Ground III** – New Evidence Showing an Incorrect Finding Regarding the Amount of Compania Dominica's Loss (*Id.* at 27);

**Ground IV** – Plea Not Entered Knowingly and Voluntarily (*Id.* at 28–29);

**Ground V** – Sentence Disparate with Sentences for Similar Crimes (*Id.* at 30);

**Ground VI** – *Brady v. Maryland* Violations (*Id.* at 31);

**Ground VII** – Counsel Failed to Present a Complete Set of 3553(a) Mitigating Factors (*Id.* at 32).

On June 1, 2021, Mr. LeDonne brought his first motion requesting leave from the Court to file an amendment to his Motion to Vacate under § 2255. (DE 484.) On August 16, 2021, Mr. LeDonne brought his second motion requesting leave from the Court to file an amendment to his Motion to Vacate under § 2255.[1] The Court now considers all three motions.

**B.      Standard of Review**

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

**C.      Discussion**

*(1) Request for Counsel*

---

[1] Mr. LeDonne labels his two motions as "Motion[s] for Leave of this Court in order to Submit Supplemental." However, they are in substance motions for leave to amend because they assert arguments that could have been asserted in his initial motion to vacate, but which were omitted. Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."). The events Mr. LeDonne's motions discuss occurred before the filing of his initial motion to vacate, and are therefore construed as motions to amend.

Mr. LeDonne has requested appointed counsel to assist him with his petition under § 2255. (DE 476-1 at 4.) The Seventh Circuit has repeatedly held that "a prisoner seeking a sentence reduction does not have a right to appointed counsel." *United States v. Johnson*, 304 F. App'x 464, 465 (7th Cir. 2008) (citing *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007); *United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999)); *see also LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967) ("We hold that the law in this circuit is that appointment of counsel for indigents in habeas corpus and section 2255 proceedings rests in the sound discretion of district courts unless denial would result in fundamental unfairness impinging on due process rights."). After all, "[t]he right of access to the courts protects prisoners from being shut out of court; it does not exist to enable the prisoner to litigate effectively once in court." *Pruitt*, 503 F.3d at 657 (quotations omitted). As explained below, the Court believes that Mr. LeDonne's arguments are baseless. Therefore, it denies his request for Counsel.

### *(2) Ground I: Ineffective Assistance of Counsel*

Mr. LeDonne first argues that he received ineffective assistance of counsel. The Sixth Amendment provides a criminal defendant with the right to counsel, U.S. Const. amend. VI, and "inherent in this right is that the defendant is entitled to the effective assistance of counsel." *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009). In order to prevail on his claim for ineffective assistance of counsel, Mr. LeDonne must establish "that his 'counsel's performance was deficient' and that 'the deficient performance prejudiced the defense.'" *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Meaning, he must establish "(1) that his attorney's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for

the ineffective assistance, the result of the proceedings would have been different." *Recendiz*, 557 F.3d at 531. The Court finds that Mr. LeDonne has not established either element.

First, the Court finds that Mr. LeDonne has not established that his counsel's performance was deficient. When analyzing a counsel's performance, a court must determine if counsel acted "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Koons*, 639 F.3d at 351 (citing *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011)). Furthermore, the Court "maintain[s] a strong presumption that the defendant received effective assistance," *Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003), and that the challenged conduct "might be considered a sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation omitted).

Mr. LeDonne provides the Court with 37 allegations concerning his counsels' performance. (DE 476 at 16–19.) An allegation that is unsupported cannot support an ineffective assistance of counsel claim. *See United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001) ("An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct."). Many of Mr. LeDonne's 37 allegations are unsupported, undeveloped, and unconvincing. For example, Mr. LeDonne asserts that "Counsel failed to investigate and do due diligence prior to petitioning the court for pretrial release," "failed to investigate and meet with witnesses," and "did not review or address the charges, indictment, elements, relevant conduct, plea offering, sentencing options, and consequences." But Mr. LeDonne does not identify which of his seven counsels he believes failed to investigate, what they failed to investigate, or the witnesses they failed to meet. Not

7

only are many of his allegations undeveloped, but some appear to be false. For instance, Mr. LeDonne alleges that "Counsel failed to timely object to [the] PSR" and that "Counsel did not inform th[e] Court that [he] was challenging the amount of loss [in the PSR]." (DE 476 at 17.) But Mr. Kupsis did make timely objections to the PSR (DE 332), and multiple objections argued there were "[t]ransactions [that] should not be considered as relevant conduct" used when calculating the amount of loss. (DE 332 at 2.)

Additionally, Mr. LeDonne alleges that there was deficient performance during the plea stage. (DE 476 at 24.) Mr. LeDonne made similar allegations earlier in the case when he attempted to withdraw his plea. (DE 389 at 5.) In his motion to withdraw his plea, he argued that Mr. Kupsis did not submit all plea agreements to Mr. LeDonne and that he misrepresented the plea offer. (DE 389 at 5.) The Court rejected that argument, writing:

> Mr. LeDonne [did] not identify what plea agreements his attorney failed to convey to him, how his attorney misrepresented the plea offer, or what guarantees his attorney allegedly made. And at the beginning of the change of plea hearing, Mr. LeDonne indicated that he wanted his attorney to withdraw a pending motion to withdraw as counsel and to continue representing him. (DE 379 p. 3–4 ("Mr. LeDonne has indicated to me that it is his wish that I withdraw the motion to withdraw and remain as his counsel in this matter. The Court: . . . Do you agree with that statement? The Defendant: Yes, Your Honor.")). Mr. LeDonne also testified under oath that he was satisfied with his attorney's representation of him in this case, which contradicts his present claims of discontent.

(DE 398 at 2–3.) Mr. LeDonne now argues that "had Mr. Kupsis fulfilled his obligations as counsel and properly advised LeDonne, to accept the capped plea from the Gov't (Dan Bella); it would have resulted in a 108 month or less sentence, [rather] than the 168 month sentence imposed by the Court." (DE 476 at 24.) But his dissatisfaction with Mr. Kupsis' performance is still contradicted by his choice to have Mr. Kupsis continue representing him and by his statement, under oath, that he was satisfied with his attorney's performance. Mr. LeDonne does include as an exhibit a letter from Mr. Kupsis to Mr. LeDonne explaining the 108-month binding plea

8

agreement. (DE 476-1.) Mr. LeDonne seems to believe the letter helps show that Mr. Kupsis' performance was deficient. But in that letter, Mr. Kupsis explains the terms of the 108-month binding plea agreement the government was willing to enter and what he perceived to be the positives and negatives of entering the plea agreement. (DE 476-1.) Given that Mr. LeDonne had previously indicated he was satisfied with his attorney's performance, and that the letter indicates his counsel informed Mr. LeDonne of the plea agreement, explained the terms, and discussed what he perceived as the positives and negatives, the Court finds that this allegation of deficient performance is also unsupported, undeveloped, and unconvincing. *See Hodges*, 259 F.3d at 660.

But even if Mr. LeDonne could show deficient performance, he has not demonstrated that he was actually prejudiced. Mr. LeDonne had to show a "reasonable probability that, but for the ineffective assistance, the result of the proceedings would have been different." *Recendiz*, 557 F.3d at 531. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ward v. Neal*, 835 F.3d 698, 703 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 694). In the case of counsel's failure to convey or advise a defendant about a plea offer by the government, the defendant must demonstrate prejudice by showing a reasonable probability that he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Fry*, 566 U.S. 134, 147 (2012); *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

The Court notes that Mr. LeDonne does not clearly address in his motion how he was prejudiced. For most of his allegations of deficient performance, Mr. LeDonne does not even attempt to explain how, but for that deficient performance, the result of the proceeding would have changed. For example, Mr. LeDonne alleges that "Counsel conveyed to LeDonne's family

9

that he would win the enhancement arguments and gave his family hope" and that "Counsel ignored hundreds of calls from family and friends." (DE 476 at 18, 19.) Even if this constituted deficient performance, Mr. LeDonne does not explain how counsel answering these calls or not telling the family he would win the enhancement arguments would have altered the procedural outcome.

The Court can only discern one allegation specifically identifying how counsel's deficient performance would have affected the result of the proceeding. Mr. LeDonne asserts that "had Mr. Kupsis fulfilled his obligations as counsel and properly advised LeDonne, to accept the capped plea from the Gov't (Dan Bella); it would have resulted in a 108 month or less sentence, [rather] than the 168 month sentence imposed by the Court." (DE 476 at 24.) It appears as if Mr. LeDonne is arguing that he would have accepted the lower plea had Mr. Kupsis "properly advise[d]" him.

As discussed above, the Court does not believe that Mr. Kupsis' performance when advising Mr. LeDonne about the plea was deficient. However, even if Counsel's performance were deficient, Mr. LeDonne has not shown there is a reasonable probability he would have accepted the plea but for that deficient performance. After Mr. Kupsis provided the 108-month binding plea agreement to Mr. LeDonne and explained the positives and negatives, Mr. LeDonne rejected the plea agreement. (Change of Plea Hr'g Tr., DE 379 at 8.) Additionally, Mr. LeDonne's conduct throughout the trial indicates his reluctance to plead guilty. He did not enter a guilty plea until three years after his indictment. (DE 1; DE 320.) Repeatedly, throughout those three years, Mr. LeDonne referred to the case as "a mockery of justice" and asserted that he was, in fact, innocent. (DE 257; DE 289-2.) In the instant motion, Mr. LeDonne again suggests that he is actually innocent: "[C]ounsel asked LeDonne to be prepared to lie during the

10

plea colloquy, by admitting his guilt to two counts of the indictment, that LeDonne clearly had no intentions of defrauding these customers." (DE 476 at 16.) Because Mr. LeDonne rejected the plea of 108 months, and has shown throughout trial reluctance to admit his guilt, the Court finds that Mr. LeDonne has not demonstrated a reasonable probability that, but for Mr. Kupsis not "properly advis[ing]" him to accept the plea, he would have accepted the plea.

Because Mr. LeDonne has not demonstrated deficient performance by counsel that prejudiced his defense, the Court finds that his claim alleging ineffective assistance of counsel fails. Additionally, the Court notes that an evidentiary hearing is not warranted. A hearing is not required if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (quoting 28 U.S.C. § 2255). An evidentiary hearing is also not required "if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'" *Id.* (quoting *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006)). As discussed above, Mr. LeDonne's allegations of deficient performance suffer from being vague, conclusory, or patently false. His claim of prejudice also suffers from being vague and conclusory. Therefore, no evidentiary hearing is required.

### (3) Grounds II–VII

The Court finds that Mr. LeDonne's remaining claims are procedurally defaulted. Except for a claim alleging ineffective assistance of counsel, "[a] claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *Mccoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016); *Massaro v. United States*, 538 U.S. 500, 509 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). Even a defendant's

challenge of "the voluntariness and intelligence of [their] guilty plea" will be procedurally defaulted unless it is "first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

If a claim is procedurally defaulted, it may "only be raised in a § 2255 proceeding if the defendant demonstrates that he is actually innocent, or that there is cause and actual prejudice." *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008) (citation omitted). "To establish actual innocence, 'a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Lund v. United States*, 913 F.3d 665, 667 (7th Cir. 2019) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Cause can be shown if there is a demonstration that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to demonstrate "actual prejudice," the petitioner must show that had the claims been brought "on direct appeal there likely would have been a different outcome in his appeal." *McCleese v. United States*, 75 F.3d 1174, 1181 (7th Cir. 1996).

The Court finds that Grounds II–VII are procedurally defaulted. When Mr. LeDonne appealed his conviction, the only issue he pursued was whether the Court erred by imposing an obstruction of justice enhancement for statements made by Mr. LeDonne during an interview with a pretrial services officer that misrepresented his criminal history. (Appellant's Br., 7th Cir. Case No. 18-2729, DE 24 at 25.) But Grounds II–VII each assert claims that were not raised in that appellate proceeding.[2] Therefore, these claims can only be raised if Mr. LeDonne

---

[2] Mr. LeDonne claims in Ground II that there is new evidence showing that a sentence enhancement for a misrepresentation in a *bankruptcy* proceeding was improper. In Ground III, he claims that there is new evidence showing that the total loss amount used for a sentence enhancement was incorrect. In Ground IV, he claims that his guilty plea was not entered knowingly and voluntarily. In Ground V, he claims his sentence was disparate when compared with similar sentences. In Ground VI, he alleges *Brady* violations. And in Ground VII, he claims that his Counsel did not present a complete set of 3553(a) mitigating factors at sentencing.

demonstrates actual innocence or cause and actual prejudice. Mr. LeDonne has not demonstrated either.

Mr. LeDonne never argues in the instant motion that he is actually innocent. At one point, he vaguely alludes to his innocence, writing that "counsel asked LeDonne to be prepared to lie during the plea colloquy, by admitting his guilt to two counts of the indictment, that LeDonne clearly had no intentions of defrauding these customers." (DE 476 at 16.) But this does not come close to showing that "it is more likely than not that no reasonable juror would have found" him guilty beyond a reasonable doubt. *See Lund*, 913 F.3d at 667. The Court emphasizes that this standard is "demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation and quotation omitted). Mr. LeDonne has not met this high bar.

Mr. LeDonne has also not demonstrated cause and prejudice. For Grounds IV–VII, Mr. LeDonne does not argue that an "objective factor external to the defense impeded [his appellate] counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). For Grounds II and III, Mr. LeDonne does argue that he has "new evidence" that may have altered his sentence. (DE 473 at 25–27.) However, even if Mr. LeDonne could demonstrate cause with this "new evidence," it's clear to the Court that Mr. LeDonne cannot show actual prejudice. *Cf. United States v. Evans*, 224 F.3d 670, 675 (7th Cir. 2000) (finding that a petitioner who alleged he had "newly discovered evidence" was not entitled to a second round of review without a demonstration of actual prejudice.).

In Ground II, Mr. LeDonne asserts that a two-level sentence enhancement was improperly given because he now has "evidence" that a document given to the trustee was a receivable report, not a production report, and that one of his attorneys wasn't present. (DE 473

13

25–26.) However, the reason Mr. LeDonne was given a sentence enhancement was because certain testimony during a section 341 creditors meeting was indisputably false:

> Trustee: All right. On the schedules that were filed with the Court, you show accounts receivable for the company with a face value of $558,000, but you indicate they're uncollectible. Why do you feel these are uncollectible?
>
> Mr. LeDonne: The product that was delivered was not complete.
>
> Trustee: All right.
>
> Mr. LeDonne: The orders were not complete.
>
> Trustee: What needed to be done to complete them?
>
> Mr. LeDonne: Various components and accessories.
>
> Trustee: Were the products delivered –
>
> Mr. LeDonne: Yes.
>
> Trustee: So the customer could complete it for a price?
>
> Mr. LeDonne: That's correct.

(PSR, DE 335 ¶ 85.) Mr. LeDonne objected to this two-sentence enhancement previously. In finding the two-level sentence warranted, the Court wrote that "the products in question had never been delivered, [and] so this testimony was false." (DE 360 at 12.) The fact that Mr. LeDonne may have been reviewing a different report and that one of his attorney's was not present is simply irrelevant to the fact that he lied about the products being delivered. Therefore, he has not demonstrated the actual prejudice necessary to raise Ground II.

In Ground III, Mr. LeDonne asserts that he has new evidence showing that he actually delivered vehicles to a company (Compania Dominica), and therefore the $52,000 loss attributable to that transaction the Court used when calculating the total loss for a sentence enhancement was improper. (DE 473 at 27.) The Court first notes that Mr. LeDonne has not

provided any evidence supporting this claim beyond his bare assertion that various reports were "inaccurate." The Court also notes that his claim is contradicted by Compania Dominica, who reported a loss of $52,000 (PSR, DE 335 ¶ 39.) But even if his claim were true, he has not shown that the result of the proceeding would have been different. The Court noted during sentencing that "in [some] instances, if the Court had sustained the defendant's objections, the guidelines would fail to account for aggravating factors relating to the scope and duration of the scheme, its effect on the victims beyond just the loss amount, and the defendant's own history of engaging in this type of conduct. Thus, even if the guideline range were different, the Court would vary to this same range to achieve a reasonable sentence." (Sentencing Hearing Tr., DE 423 at 71.) Because the Court would have likely imposed the same sentence, even if Mr. LeDonne had evidence that the loss amount was improperly included, he has not demonstrated actual prejudice.

Without a showing of actual innocence or cause and actual prejudice, any claims not asserted on appeal are procedurally defaulted. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008). Accordingly, the Court finds that the claims brought in Grounds II-VII are procedurally defaulted.

Finally, the Court finds that an evidentiary hearing is not warranted for these claims. A hearing is not required if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Martin*, 789 F.3d at 706. For Grounds II–VII, the record, files, and motions conclusively show that Mr. LeDonne's claims were procedurally defaulted. Therefore, no evidentiary hearing is needed.

### (4)  *Motions Seeking Leave to Amend*

15

Mr. LeDonne's arguments in his motions seeking leave to amend are unclear, but the Court does its best to summarize them. In Mr. LeDonne's first motion seeking leave to amend, he argues that his attorney, Mr. Kuspis, was ineffective as counsel because he should have filed a "motion to dismiss the indictment" given that "improper evidence substantially influenced the grand jury's decision to indict LeDonne . . . ." (DE 484 at 3.) In his second motion seeking leave to amend, Mr. LeDonne argues that the statute of limitations had expired, and that Mr. Kupsis was ineffective by not noticing. (DE 487.)

A district court may apply the Federal Rules of Civil Procedure in a lawful manner consistent with the Rules Governing § 2255 Proceedings. Rule 12, Rules Governing Section 2255 Proceedings for the United States District Courts. The entitlement to modify, add, or drop issues while the litigation proceeds is "circumscribed by Federal Rule of Civil Procedure 15(a)." *Vitrano v. United States*, 643 F.3d 229, 234 (7th Cir. 2011). Rule 15(a) provides that a party may amend a pleading once "as a matter of course at any time before a responsive pleading is served," or, otherwise, "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). The Court should grant leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). Reasons for finding that leave should not be granted include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] *futility of amendment* . . . ." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (quoting *Foman v. Davis*, 371 U.S. 178 (1962) (emphasis added).

The time has passed for Mr. LeDonne to amend as a matter of course and the Court believes that granting either one of Mr. LeDonne's motions for leave to amend would be futile.

An amendment is futile if it lacks legal substance. *United States v. Reynolds*, No. 2:10-CR-164, 2018 WL 4076986, at *10 (N.D. Ind. Aug. 27, 2018) ("Because petitioner's] argument with regard to his claim lacks merit, the amendment is denied as futile."); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (finding that an amendment to a complaint is futile if it would not survive a motion to dismiss for failure to state a claim).

Both of Mr. LeDonne's proposed claims of ineffective assistance of counsel claims are baseless. As discussed above, an allegation that is unsupported cannot support an ineffective assistance of counsel claim. *See Hodges*, 259 F.3d at 660. The claim that Mr. Kupsis' performance was deficient when he didn't object to the grand jury's indictment is conclusory, vague, and incoherent. For example, Mr. LeDonne asserts that the Prosecutor, Mr. Schmid, committed "misconduct" by representing certain documents as "unlawful" to the grand jury when "NONE OF THE DOCUMENTS RELATED TO THE PAUL TRANSACTIONS WERE UNLAWFUL." (DE 484 at 2.) Mr. LeDonne then asserts that "this may have been only one of the many issues that AUSA Schmid presented in conflicting roles as prosecutor and witness." (DE 484 at 2.) His counsel was allegedly ineffective because he did not notice these defects. (DE 484 at 3.) But this is precisely the type of conclusory statement, supported by vague assertions, that cannot support an ineffective assistance of counsel claim. *See Hodges*, 259 F.3d at 660. Therefore, the Court finds that granting Mr. LeDonne's first motion seeking leave to amend would be futile.

Granting Mr. LeDonne's second motion seeking leave to amend would also be futile. In this motion, Mr. LeDonne claims that Mr. Kupsis was ineffective because he didn't notice the statute of limitations had expired. (DE 487.) But despite Mr. LeDonne's protestations, it's clear that the statute of limitations had not expired. For purposes of mail fraud and wire fraud, a five-year statute of limitations begins to run from the date of mailing of the fraudulent information.

17

*United States v. Barger*, 178 F.3d 844, 847 (7th Cir. 1999). Each mailing constitutes a separate offense. *Id.* at 847. In his change of plea hearing, Mr. LeDonne, under oath, agreed that the two events underlying the offenses he was ultimately convicted of (Counts 8 and 14) took place in 2013. (Change of Plea Hr'g Tr., DE 379.) Mr. LeDonne's indictment was handed down on May 14, 2014. This is well within the five-year statute of limitations for mail and wire fraud. Therefore, the Court finds that granting Mr. LeDonne's second motion seeking leave to amend would also be futile.

Accordingly, the Court denies both motions seeking leave to amend. (DE 484; DE 487.)

### (5) *Certificate of Appealability*

The Court also declines to issue a certificate of appealability. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). For the reasons the Court already discussed in denying the motion, the Court does not believe that the resolution of this motion is debatable or that the issues deserve encouragement to proceed further.

The Court advises Mr. LeDonne, though, that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. If Mr. LeDonne wishes to appeal this

judgment, a notice of appeal must be filed within 60 days after the judgment is entered. Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts; Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006).

**D.    Conclusion**

The Court DENIES Mr. LeDonne's motion to vacate under § 2255, his request for an evidentiary hearing, and his request for counsel. (DE 476). The Court also DENIES Mr. LeDonne's motions seeking leave to amend. (DE 484; DE 487.). Lastly, the Court DENIES the issuance of a certificate of appealability. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: September 20, 2021

                                                /s/ JON E. DEGUILIO
                                                Chief Judge
                                                United States District Court